**No. 06-86 T**
**(The Honorable Emily C. Hewitt)**

_____
_____

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
_____

**DESERET MANAGEMENT CORPORATION,**

**Plaintiff,**

v.

**THE UNITED STATES,**

**Defendant**

_____

**RESPONSE OF THE UNITED STATES**
**TO PLAINTIFF'S RENEWED MOTION TO COMPEL DISCOVERY**
_____

**EILEEN J. O'CONNOR**
 *Assistant Attorney General*

**DAVID GUSTAFSON**
**STEVEN I. FRAHM**
**W.C. RAPP**
 *Attorneys*
 *Justice Department (Tax)*
 *Court of Federal Claims Section*
 *P.O. Box 26*
 *Ben Franklin Post Office*
 *Washington, D.C.  20044*
 (202) 307-0503
 (202) 514-9440 (facsimile)

_____
_____

# TABLE OF CONTENTS

**Page**

Response of the United States to plaintiff's renewed motion to compel discovery.. . . . . . . . . . . 1

The coordinated issue paper.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

The interrogatory responses are proper. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Relevance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

1.   To be discoverable, material must be relevant to a fact germane
     to a specific claim or defense raised in the pleadings. . . . . . . . . . . . . . . . 7

2.   Unlike other cases heard by the Court, in tax cases the Government
     seldom is in possession of discoverable material. . . . . . . . . . . . . . . . . . . 8

3.   Claims raised by the pleadings.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

4.   What is Internal Revenue Service thought, and why it made the
     determinations it did, is not relevant in a tax refund suit, and
     therefore such material is ordinarily not discoverable. . . . . . . . . . . . . . . 11

Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1.   Attorney-client privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

2.   The deliberative process privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

3.   The attorney work-product doctrine.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Section 6103.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## TABLE OF AUTHORITIES

**Page**

**Cases:**

*Beresford v. United States*, 123 F.R.D. 232 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Bernardo v. Commissioner*, 104 T.C. 677 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Church of Scientology of California v. Internal Revenue Service*, 484 U.S.
     9 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30, 31

*Church of Spiritual Technology v. United States*, 20 Cl. Ct. 762 (1990). . . . . . . . . . . . . 13

*Cities Service Helex, Inc. v. United States*, 216 Ct. Cl. 470 (1978) (*en banc*). . . . . . . . . 15

*Clapp v. United States*, 875 F.2d 1396 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854
     (D.C. Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 26

*Cook v. United States*, 46 Fed. Cl. 110 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Delaney, Midgail & Yound v. Internal Revenue Service*, 826
     F.2d 124 (D.C. Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Department of Interior v. Klamath Water Users Protective Ass'n*, 532
     U.S. 1 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Environmental Protection Agency v. Mink*, 410 U.S. 73 (1973). . . . . . . . . . . . . . . . . . . 22

*Ernest and Mary Hayward Weir Foundation v. United States*, 508 F.2d
     894 (2d Cir. 1974), a*ff'g* 72-1 U.S. Tax Cas. (CCH) ¶9,435
     (S.D.N.Y. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Estate of Brimm v. Commissioner*, 70 T.C. 15 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ferrell v. U.S. Dept. of Housing and Urban Development*, 177 F.R.D.
     425 (N.D.Ill. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Page**

**Cases (Continued):**

*Flamingo Fishing Corp. v. United States*, 31 Fed. Cl. 655 (1994). . . . . . . . . . . . . . . . . 12

*Garner v. Wolfingarger*, 430 F.2d 1093 (5th Cir. 1970).. . . . . . . . . . . . . . . . . . . . . . . . . 15

*Garity v. United States*, 46 A.F.T.R.2d (P-H) ¶80-5062 (E.D. Mich. 1980). . . . . . . . . . 13

*Gold Emporium, Inc. v. Commissioner*, 910 F.2d 1374 (7th Cir. 1990).. . . . . . . . . . . . . 12

*Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324 (1974). . . . . . . . . . . . . . . . . . . 12

*Huntleigh USA Corp. v. United States*, 71 Fed. Cl. 726 (2006). . . . . . . . . . . . . . . . . . . 19

*In re Echostar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006). . . . . . . . . . . . 15

*In re Grand Jury Subpoena.*, 341 F.3d 331 (4th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . 15

*ISI Corp. v. United States*, 503 F.2d 558 (9th Cir. 1974), *aff'g*, 31
    A.F.T.R.2d. (P-H) ¶73,400 (N.D. Cal. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Jackson v. Commissioner*, 73 T.C. 394 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Jordan v. Department of Justice*, 591 F.2d 753 (D.C. Cir. 1978). . . . . . . . . . . . . . . . . . 17

*Kaiser Aluminum & Chemical Corporation v. United States*, 141 Ct. Cl.
    38, 157 F.Supp. 939 (9th Cir. 1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19, 22

*Kamman v. Internal Revenue Service*, 56 F.3d 46 (9th Cir. 1995). . . . . . . . . . . . . . . . . 30

*Lewis v. Reynolds*, 248 U.S. 281 (1932). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Marriott International Resorts, L.P. v. United States*, 437 F.3d 1302
    (Fed. Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-19, 22

*Mayes v. United States*, 86-2 U.S. Tax Cas. (CCH) ¶9607 at 85,401
    (W.D. Mo. 1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Nat'l Right to Work Legal Defense and Educ. Foundation Inc. v.
    United States*, 487 F. Supp. 801 (E.D.N.C. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Page**

**Cases (Continued):**

*NLRB v. Sears Roebuck Co.*, 421 U.S. 132 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 22

*Paalan v. United States*, 51 Fed. Cl. 738 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pacific Gas and Electric Co. v. United States*, 70 Fed. Cl. 128 (2006). . . . . . . . . . . . . . . 18

*Pacific Gas and Electric Co. v. United States*, 71 Fed. Cl. 205 (2006). . . . . . . . . . . . 19, 23

*Pierson v. United States*, 428 F. Supp. 384 (D. Del. 1977). . . . . . . . . . . . . . . . . . . . . . . 12

*Renda Marine, Inc. v. United States*, 62 Fed. Cl. 371 (2004). . . . . . . . . . . . . . . . . . . . . 15

*Resorts, L.P. v. United States*, 437 F.3d. 1302 (Fed. Cir. 2006). . . . . . . . . . . . . . . . . . . 18

*Revell, Inc. v. Riddell*, 273 F.2d 649 (9th Cir. 1959), *cert. denied*, 364
    U.S. 835 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ruth v. United States*, 823 F.2d 1091 (7th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Scar v. Commissioner*, 814 F.2d 1363 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Simons-Eastern Co. v. United States*, 55 F.R.D. 88 (N.D. Ga. 1972). . . . . . . . . . . . . . . 13

*System Fuels, Inc. v. United States*, 73 Fed. Cl. 206 (2006). . . . . . . . . . . . . . . . . . . . . . . 8

*Tax Analysts v. Internal Revenue Service*, 117 F.3d 607 (D.C. Cir. 1997). . . . . . . . . . . 25

*Tax Analysts v. Internal Revenue Service*, 152 F.Supp.2d 1 (D.D.C. 2001). . . . . . . . . . 17

*Union Pacific Railroad Co. v. United States*, 182 Ct. Cl. 206 (1968). . . . . . . . . . . . . . . 11

*United States v. Adlman*, 134 F.3d 1194 (2nd Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Farley*, 11 F.3d 1385 (7th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Jacobs*, 117 F.3d 82 (2nd Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Kordel*, 397 U.S. 1 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Page**

**Cases (Continued):**

*United States v. Roxworthy*, 457 F.3d 590 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . 25-26

*Upjohn v. United States*, 449 U.S. 383 (1981).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*Vallone v. Commissioner*, 88 T.C. 794 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Vons Companies, Inc. v. United States*, 51 Fed. Cl. 1 (2001). . . . . . . . . . . . . . . . . . . 19, 29

*Walsky Construction Co. v. United States*, 20 Cl. Ct. 317 (1990). . . . . . . . . . . . . . . . . . 17

*Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494 (4th Cir. 1977). . . . . . . . . . . . . . . . 6

*Zingg v. Department of Treasury, IRS*, 388 F.3d 839 (Fed. Cir. 2004). . . . . . . . . . . . . . 28

**Statutes:**

18 U.S.C., § 1905. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Internal Revenue Code of 1986 (26 U.S.C.):

     § 1031.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     § 1503.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     § 6103.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3, 28-32
     § 6108.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
     § 6212.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
     § 6213.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Miscellaneous:**

Rules of the United States Court of Federal Claims

     Rule 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     Rule 26. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 24, 26
     Rule 33. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Treasury Regulation (26 C.F.R.), § 1.170A-11T(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . 10

6 James Wm. Moore, Moore's Fed Practice § 26.41[2][a] at 26 (3d ed. 2003). . . . . . . . . 8

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

DESERET MANAGEMENT            §
   CORPORATION               §
                             §
        **Plaintiff,**            §
                             §   **No. 06-86 T**
    **v.**                    §   **The Honorable Emily C. Hewitt**
                             §
THE UNITED STATES,            §
                             §
        **Defendant.**            §

---

**RESPONSE OF THE UNITED STATES
TO PLAINTIFF'S RENEWED MOTION TO COMPEL DISCOVERY**

---

     Defendant, the United States, pursuant to the Order of January 19, 2007, respectfully

provides this response to plaintiff's renewed motion to compel discovery, filed January 31, 2007.

Despite defendant's considerable further admissions and accommodations to plaintiff made in an

effort to resolve the differences between the parties, plaintiff's renewed motion reflects that

plaintiff has not reciprocated to any extent.  Plaintiff's motion provides no basis for concluding

that defendant's responses to plaintiff's discovery are other than full, complete, and proper.  The

Government has provided detailed privilege logs and affidavits to assert attorney-client, work-

product and deliberative process privileges, and to note those documents which would require

disclosure of the tax return information of unrelated taxpayers, prohibited by section 6103 of the

Internal Revenue Code.  Plaintiff's motion provides no basis for concluding that those logs or

affidavits are insufficient, incomplete, or otherwise defective so as to place upon the Court the

- 1 -

considerable burden – already undertaken by the Government – to review each protected document.  Plaintiff's motion likewise fails to establish that any of the documents described in § 6103 fall within any of the exceptions to that statute, so as to permit their disclosure.  Finally, plaintiff's motion has not even begun what would be the considerable task of demonstrating that any particular document is relevant to any fact germane to a claim or defense made by the pleadings, and that plaintiff has a compelling need for that particular document.  Plaintiff's motion should be denied, and the parties and the Court permitted to move on to tasks which will actually contribute to resolution of the instant case.

On December 20, 2006, plaintiff filed motions to compel discovery.  Thereafter, the Government moved to strike them as not complying with the Rules (in that there had been no attempt by plaintiff amicably to resolve the dispute before the motion was filed).  At that juncture, new counsel entered his appearance for the Government, and promptly contacted plaintiff's counsel to determine whether their disputes might be narrowed, or perhaps eliminated. Defendant's counsel requested that plaintiff's counsel prioritize his complaints.  That is, we asked for plaintiff to tell us which problem was most important, or which problem, if resolved, would be most helpful.  In short, we asked that plaintiff advise us which problems to address first.  This plaintiff did in a Memorandum dated January 12, 2007, a copy of which is attached as Exhibit A.  In seeking to resolve the issues between the parties, the Government followed this roadmap, and provided to plaintiff virtually everything plaintiff sought.  In some cases, we could not do what plaintiff requested because we had great difficulty understanding plaintiff's purpose, and therefore judging what sort of response would be adequate.  We have not offered to waive any of the privileges that have been asserted with respect to the production of documents,

because plaintiff has offered no rationale for our doing so.  Of course, it is not within our power to waive the provisions of section 6103, which protects the confidentiality of taxpayer return information.  Once the Internal Revenue Service determines that such information would be disclosed, the statute requires that it be protected.  The documents are irrelevant, the documents are privileged, and they simply ought not be produced.

Plaintiff's Renewed Motion to Compel is remarkable chiefly for the fact that it shows plaintiff to be unwilling to compromise.  The only difference between the present motion and the one previously filed is that where plaintiff has received precisely that which plaintiff demanded, in precisely the form in which plaintiff demanded it, plaintiff is content.  But anything which the Government declines to concede plaintiff adamantly demands.  Indeed, even where the Government has now admitted the matters identified by plaintiff as being most important to it, plaintiff demands that it be done in some other form.  See Motion to Compel, at 4, note 2. According to plaintiff, all of the documents withheld based upon attorney-client privilege, work-product privilege, deliberative-process privilege, taxpayer privacy (§ 6103) – every one of them – must be produced.  According to plaintiff no claim of privilege is valid; no document actually contains another taxpayer's private information; no document provides legal advice; none recounts protected deliberations; and the production of every document is essential.  This rigidity must inform the Court's evaluation of plaintiff's arguments. [1]

---

[1]  The original motion to compel included an Exhibit O, in which plaintiff had listed a total of 6 documents (comprised of a total of 14 pages) the disclosure of which it did not seek.  A trifling exception that proved the rule.  But even that minor concession appears to have been excised from the renewed motion, although plaintiff's mode of attaching and incorporating selected materials makes it difficult to tell.

## THE COORDINATED ISSUE PAPER

Many of the party's discovery difficulties stem from plaintiff's frequently expressed concern that something called the "Coordinated Issue Paper" would be used – in some way plaintiff is unable clearly to articulate – to plaintiff's detriment.  The Paper was published to proved guidance and suggestions to Internal Revenue Service personnel with respect to transactions involving like-kind exchanges (governed by § 1031 of the Internal Revenue Code) of broadcast properties, and the problems sometimes encountered in that context regarding the values of the various assets exchanged.  The case at bar, of course, does not involve a like-kind exchange.  After discussing various legal issues not raised in the instant case, the Paper concludes that when broadcast station assets require valuation, care must be taken that all assets – tangible and intangible – are taken into account.  More specifically, the Paper warns that sloppy assumptions (such as that one or another intangible asset is not present, without any expert factual inquiry as to whether it actually is or is not present) should be avoided, and all assets valued.  It notes that similar conclusions had been reached by both the Financial Accounting Standards Board, and the staff of the Securities and Exchange Commission.  This would seem to us to be rather a matter of common sense, but for some reason it scares plaintiff to death.  A copy of the Paper is attached as Exhibit B.

The Government does not understand why plaintiff is concerned about this document.  The Government's attorneys cannot imagine how it could be used at trial to advance the Government's case, or to retard plaintiff's case.  Nevertheless, because plaintiff indicated that it would drop its demand for the production of some sub-set of documents if the Government did not intend to use the Coordinated Issue Paper, Government counsel suggested to plaintiff that

plaintiff draft language that would satisfy plaintiff on this score.  Eventually, plaintiff did so.  But

when defendant's attorneys sought to agree on specific language, plaintiff changed its mind, and

suggested more modifications.  Time being short, we decided that the expedient course was not

to negotiate further, but instead to assure plaintiff in writing that we had no intention of

suggesting that this Paper had any legal effect.  Accordingly, we provided plaintiff with a letter,

stating as follows:

> In order to resolve certain discovery disputes that have arisen, this is to
> advise you that the Government will not rely upon the Coordinated Issue Paper
> dated May 27, 2005, nor will it take the position in this action that any particular
> method for determining the fair market value for federal income tax purposes of
> an FCC license or any other asset of a television station is required, or is
> impermissible or prohibited as a matter of law.

Plaintiff now professes that it has no idea what dispute over documents might be resolved

by this, and returns simply to its demand that all documents be produced: "If the Government

believes that its statement in the January 26, 2007, letter resolves some privilege issue, it should

identify the particular documents that are not longer responsive to the First Request."  See

Motion to Compel at 7.  But it is plaintiff's counsel who has insisted that some documents be

produced because they have something to do with this Paper.  And it was plaintiff's counsel who

indicated, in the January 12 Memorandum (attached as Exhibit A) that some sort of assurance

would result in some of those documents not being necessary.  Indeed, plaintiff identified this as

the third most important matter requiring resolution, and stated:

> Stipulation on the CIP would resolve the motions as to Interrogatories Nos. 5, 6,
> and 11.

We therefore do not understand what plaintiff wants, or what concern it has that is not

addressed in our letter.  Plaintiff vaguely states (Motion to Compel at 6) that it must continue

discovery regarding this Paper "in order to ascertain what objective basis, if any, exists for the statements made in the CIP.  This inquiry is vital . . . ."  The principal issue in this case, however, will be the proper valuation of the assets of KIRO-TV in Seattle, Washington.  Resolution of that matter will, in turn, depend on the Court's assessment of the quality of the analysis offered by the parties' experts.  It will not depend on statements in an IRS paper (which defendant has, in any event, confirmed it will not rely on).  The KIRO-TV valuations issues in this case thus do not depend to any extent – certainly not "vitally" – on the basis for statements in the Paper.  We can do no more. [2/]

## THE INTERROGATORY RESPONSES ARE PROPER

Another  illustration of plaintiff's inflexibility is its insistence that a party's interrogatory responses (as distinguished from objections) cannot be signed by that party's attorney.  Motion to Compel at 8 - 9.  It is no accident that plaintiff cites no cases.  Rule 33(b)(2)  commands that "The answers are to be signed by the person making them, and the objections signed by the attorney making them."  Interrogatories may only be directed to parties, and a party that is not a natural person must necessarily designate someone to answer on its behalf.  *United States v. Kordel*, 397 U.S. 1, 8 (1970).  Rule 33(a) expressly provides that interrogatories to a governmental agency are to be answered "by any officer or agent, who shall furnish such information as is available to the party."  And that agent may be the party's attorney.  *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 508 & n. 36 (4th Cir.1977).  The interrogatory

---

[2/] Plaintiff suggests that "the Government appears to be preserving the option that its experts could use the CIP in connection with rendering opinions in this action."  Motion to Compel at 6.  We have no idea how an expert, presenting her opinion as to the value (for example) of the KIRO-TV license, could be heard to testify that it was not only her opinion, but she was really, really sure she was right, because the CIP told her so.

answers, as admissions of a party opponent, are admissible at trial.  Plaintiff is simply wrong that

defendant's responses to plaintiff's interrogatories cannot be signed by defendant's attorney.

Plaintiff's further complaints that the interrogatory responses are deficient and must set

out even more information about the thinking of Internal Revenue Service employees during the

audit must be rejected, since the information sought is entirely irrelevant.  The audit, the

Service's conclusions reached in the audit, and, indeed, the thoughts and conclusions of

individual Internal Revenue Service employees are all irrelevant to the proper valuation of

KIRO-TV assets.  Nevertheless, plaintiff has already in its possession every non-privileged

document generated by the audit.  If plaintiff wishes to sift through all of those many documents

in its quest to establish matters that can have no bearing on the valuation of KIRO-TV assets, it is

free to do so.  But plaintiff should not be permitted to required Government counsel to employ

his time to explain to plaintiff matters that underlie these irrelevant documents.

## RELEVANCE

1.  <u>To be discoverable, material must be relevant to a fact germane to a specific claim
or defense raised in the pleadings</u>.

Rule 26 (b)(1) provides that, unless otherwise limited by court order, parties may "obtain

discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

party . . . ."  Thus, the threshold question presented for resolution of any discovery dispute is

whether the document or testimony sought is relevant.  This definition, corresponding to that

found in Rule 26 of the Federal Rules of Civil Procedure, was narrowed by amendments adopted

in 2000.  Prior to that time, the Rules permitted discovery of material so long as it was relevant to

the "subject matter involved in the pending action."  Under the amended Rule, it is not enough

that what is sought by discovery is merely somehow connected to the subject matter of the suit. Instead, the fact must be "germane to a specific claim or defense asserted in the pleadings for information concerning [the fact] to be a proper subject of discovery."  The court, in its analysis, must "focus on the specific claim or defense alleged in the pleadings." *System Fuels, Inc. v. United States*, 73 Fed.Cl. 206, 215 (2006), relying upon and quoting from 6 James Wm. Moore, Moore's Fed. Practice § 26.41[2][a] at 26-109 - 26-110 (3d ed.2003).

    2.    <u>Unlike other cases heard by the Court, in tax cases the Government seldom is in possession of discoverable material</u>.

While the docket of the Court of Federal Claims is limited to claims against the United States, we at the Tax Division often lose sight of the fact that the Court's tax work is a tiny sliver of the Court's jurisprudence.  This Court issues relatively few substantive opinions in tax cases. In December of last year, for example, the Court posted 31 decisions on its web site, only two of which were tax cases. And of the two, one was dismissal of a *pro se* complaint for lack of jurisdiction. During all of calendar 2006, the Court posted 354 opinions, of which only 23 were tax cases, including 6 dismissals for want of jurisdiction.

The significance of this to the instant dispute is that in virtually all of this Court's non-tax cases, the United States is not only defendant, but was an active participant in the events of which some plaintiff complains.  In a contract case, plaintiff agreed to construct a building, build a fighter-bomber, or provide pencils to the Government of the United States.  In a personnel case, plaintiff is or was a soldier, sailor, airman, marine or civilian employee of the United States.  In a takings case, plaintiff complains that his property was improperly taken by the Government.  In each kind of case a plaintiff complains that his employer, or the party with whom he has

contracted, has done (or failed to do) something giving rise to a right to compensation.  Or he complains that the Government has taken his land or his invention.  In all such cases, therefore, the Government will have documents relevant to the issues raised.  There will be witnesses  –  contracting officers, supervisors, inspectors, engineers, bulldozer operators – who participated in the events leading up to the difficulty alleged by the plaintiff to entitle him to recover.  There will be, in other words, relevant evidence in the possession of the United States that the plaintiff does not already have, and the Government will have direct knowledge of the material events.  *But not so in tax cases, and not so in the instant case.*

For many years plaintiff – or plaintiff's subsidiary, or plaintiff's predecessor's subsidiary, or another entity under common control with plaintiff – owned and operated KIRO-TV in Seattle, Washington.  In 1994 it was determined by plaintiff (and plaintiff's owners) that the station should be sold, and it was in fact sold to A. H. Belo in February of 1995.  The Government participated in none of these events.  The Government was not a party to any of the transactions involved, nor was it an observer of the station's operation, or of the negotiations leading to its sale.  Only after those events had already occurred, and were fixed for all time, did the Internal Revenue Service even become interested in any of these events, when it set out to determine plaintiff's correct tax liability.  Every fact known to the Service it learned from plaintiff, in the course of the audit.  Everything contained in the Government's files relating to this case is either hearsay, derived from information provided by plaintiff, or is the conclusion, recommendation, speculation, argument, analysis, or legal reasoning of some employee of the Internal Revenue Service.  Plaintiff has no need to discover factual information it provided to the Government, and the thoughts of IRS employees are not relevant to the proper valuation of

KIRO-TV assets.  Thus, no one would expect to find discoverable information in the Government's files.  And plaintiff has found none.

      3.    <u>Claims Raised by the Pleadings</u>.

      Since the Rules provide that, to be discoverable, the material sought must be relevant to some fact which is germane to a specific claim asserted in the pleadings, it would be useful to determine what those claims or defenses actually are.  The complaint succinctly sets out plaintiff's claims in paragraph 4:

      (a)    The Service erroneously determined the fair market value of certain television station assets sold by BIC in 1995 and erroneously treated as part of the sale certain alleged television station assets that, in fact, did not exist.

      (b)    The Service erroneously determined DMC's gain on the 1995 sale of the television station assets.

      (c)    The Service erroneously determined the charitable contribution deduction for DMC's consolidated life/non-life taxable income.

      (d)    The Service erroneously applied Treas. Reg. § 1.170A-11T(b)(2) and I.R.C. § 1503(c)[b] in the 1995 and 1997 tax years in determining DMC's allowable Net Operating Loss ("NOL") deduction.

These are the same four claims identified by the Government in the Joint Preliminary Status Report, filed August 23, 2006, in ¶ (h), at p. 3. [3/] Since that time, the Government has not sought

_____

[3/] Oddly, plaintiff claimed in the JPSR that it couldn't tell what the issues were, and blamed its ignorance on the Government.  Just as the Government was not present and did not participate in the events that are relevant to the instant case, the Government had no participation whatever in the drafting of plaintiff's complaint, or in determining what issues it would raise.

to raise any additional defenses (such as lack of jurisdiction or affirmative defenses as set out in

Rule 8(c)) or offsets, either via amended pleadings or otherwise. *Lewis v. Reynolds*, 284 U.S.

281 (1932). *See Union Pacific Railroad Co. v. United States*, 182 Ct.Cl. 103, 389 F.2d 437

(1968), for a particularly complex and elaborate set of claims, offsets, and setoffs to offsets.

    4.    <u>What the Internal Revenue Service thought, and why it made the determinations it did, is not relevant in a tax refund suit, and therefore such material is ordinarily not discoverable.</u>

This case is not a review on an administrative record.  It is a new evaluation of the claims

properly before the Court.  It will do plaintiff no good to show that the Commissioner failed to

consider something, or did a poor job of analyzing the information in his possession.  In light of

the issues raised by the pleadings, plaintiff in this case must show:

    (a)    The fair market value of the television station assets actually sold

by BIC in 1995.

    (b)    DMC's gain on the 1995 sale of the television station assets.

    (c)    The charitable contribution deduction for DMC's consolidated

life/non-life taxable income.

    (d)    With respect to the 1995 and 1997 tax years, DMC's allowable Net

Operating Loss ("NOL") deduction.

These are, of course, nothing more than positive statements of the claims made by plaintiff in the

Complaint.

Plaintiff must go about this task affirmatively, by presenting positive evidence of those

propositions of fact it deems material.  It will do plaintiff no good to show that, on audit,

employees of the Internal Revenue Service came to conclusions that were foolish, or unsupported

- 11 -

by the facts.  *Flamingo Fishing Corp. v. United States*, 31 Fed. Cl. 655 (1994).  It is

well-established that a suit pertaining to the recovery or refund of federal taxes is effected by a

trial *de novo*, in which the correct amount of tax liability must be established, rather than by a

judicial review of an existing administrative record.  *Ruth v. United States*, 823 F.2d 1091, 1094

(7th Cir. 1987); *Gold Emporium, Inc. v. Commissioner*, 910 F.2d 1374, 1378 (7th Cir. 1990);

*Clapp v. United States*, 875 F.2d 1396, 1402-1403 (9th Cir. 1989).  Factual issues in tax refund

suits "are tried . . . with no weight given to subsidiary factual findings made by the Service in its

internal administrative proceedings."  *Cook v. United States*, 46 Fed.Cl. 110, 113 (2000).  Courts

will not generally "look behind an assessment to evaluate the procedure and evidence used in

making the assessment."  *Ruth*, 823 F.2d at 1094.  As a trial *de novo*, courts will review only the

merits of the case (i.e., the taxpayer's liability) and not the propriety, motives, or procedures

involved in the IRS's determination of that liability.  See *Ruth*, 823 F.2d at 1094; *Scar v.

Commissioner,* 814 F.2d 1363, 1368 (9th Cir. 1987);  *Estate of Brimm v. Commissioner*, 70 T.C.

15, 22 (1978); *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327-328 (1974); see also

*Revell, Inc. v. Riddell*, 273 F.2d 649, 659 (9th Cir. 1959), cert. denied, 364 U.S. 835 (1960).

"The legal and factual analysis undertaken by the IRS is of no concern to the court .... [T]he court

is to "place itself in the shoes of the Commissioner [of the IRS]" and apply the law to the facts

presented ..."  *Mayes v. United States*, 86-2 U.S. Tax Cas. (CCH) ¶9607 at 85,401 (W.D. Mo.

1986) (citing *Nat'l Right to Work Legal Defense and Educ. Foundation, Inc. v. United States*, 487

F. Supp. 801, 805 (E.D.N.C. 1979); *Pierson v. United States,* 428 F. Supp. 384, 388 (D. Del.

1977)). See *Garity v. United States*, 46 A.F.T.R.2d (P-H) ¶80-5062 (E.D. Mich. 1980); *Vallone

v. Commissioner*, 88 T.C. 794, 806 (1987); *Jackson v. Commissioner*, 73 T.C. 394, 400 (1979).

Accordingly, the courts have held that the opinions, interpretations, and deliberations of IRS employees are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in a federal tax suit; thus, such information is not discoverable.   *ISI Corp. v. United States*, 503 F.2d 558, 559 (9th Cir. 1974), *aff'g,* 31 A.F.T.R.2d (P-H) ¶73-400 (N.D. Cal. 1972); *Ernest and Mary Hayward Weir Foundation v. United States*, 508 F.2d 894, 895 n.2 (2d Cir. 1974), aff'g, 72-1 U.S. Tax Cas. (CCH) ¶9,435 (S.D.N.Y. 1972);  *Garity*, 46 A.F.T.R.2d (P-H) at 80-5145;  *Simons-Eastern Co. v. United States*, 55 F.R.D. 88 (N.D. Ga. 1972); *Mayes*, 86-2 U.S. Tax Cas. (CCH) at 85,402.  Even were plaintiff able to establish that agents of the Service were motivated by malice, it would do plaintiff no good, since such facts cannot provide any support.  *Church of Spiritual Technology v. United States*, 20 Cl.Ct. 762, 765 (1990) ("To the extent there was animus, ill-will or discrimination in the ruling itself, that impropriety cannot provide analytical support for the Government's position. The court's ruling will be drawn from the facts established in the record. If the adverse ruling was affected in the way plaintiff argues, plaintiff's task should be concomitantly easier.")

We expect plaintiff will consider this to be old news, and to insist that it confidently plans to carry its burden and prove the correct amount of tax.  But that assertion has nothing to do with the instant discovery dispute, which involves plaintiff's insistence on investigating matters having no bearing on its proof of the correct tax.  The question of relevance, and the fact that the files of the Internal Revenue Service will seldom actually include any discoverable information, is central to the discovery dispute presently before the Court.  It means that plaintiff must specifically explain and identify how any discovery it now seeks to compel can yield material that is actually germane to a specific issue that has actually been raised.  Given that what the

- 13 -

Service did is ordinarily irrelevant, and the fact that the Service will in any event know nothing not learned from plaintiff itself, why is this case different?  Why in this case, but not in most cases, does plaintiff believe that those files are instead a treasure trove of relevant information?  It is not enough for plaintiff to say that it must be prepared for any eventuality (as if information from the Service's files might contribute to such preparation), or that it can't know what it might find, or how it might use it until after it knows what it might find.  The Government has already produced thousands of pages of documents in response to plaintiff's discovery, and has consumed hundreds of hours of attorney and other time in gathering information and preparing its responses.  Plaintiff must be required to explain to the Court, in specific terms, what finding of fact it envisions will be supported by the material it continues to seek, and how that finding of fact is material and germane to any issue raised by the pleadings.  This plaintiff has failed to do, because it cannot be done.

## PRIVILEGE

In addition to its relevance objections, the Government has raised the attorney-client privilege, the attorney work-product privilege, and the deliberative process privilege as grounds for withholding documents otherwise responsive to plaintiff's discovery.  Plaintiff has provided no reason to conclude that the documents are not privileged, and has failed to show any compelling need for any of the documents, so as to be entitled to their production despite their privileged status.

- 14 -

1.    <u>Attorney-client privilege</u>.

As the Federal Circuit has explained (*In re EchoStar Communications Corp.*, 448 F.3d

1294, 1300-01 (Fed. Cir. 2006)) the attorney-client privilege serves important purposes:

> "The attorney-client privilege protects the confidentiality of communications
> between attorney and client made for the purpose of obtaining legal advice."
> [quoting *Genentech, Inc. v. Int'l Trade Comm'n*, 122 F.3d 1409, 1415
> (Fed.Cir.1997)].  We recognize the privilege in order to promote full and frank
> communication between a client and his attorney so that the client can make
> well-informed legal decisions and conform his activities to the law. See *Upjohn*
> [*Co. v. United States*, 449 U.S. 383], at 389 (1981); *XYZ Corp. v. United States*,
> 348 F.3d 16, 22 (1st Cir.2003).

Thus, information provided by a client to his attorney, as well as the advice provided by the

attorney in response, is protected from disclosure.  It is well settled that the privilege applies to

Government employees, including communications by the Department of Justice to a client

agency, and by that agency's own attorneys to non-attorney personnel seeking or being provided

with legal advice.  *Cities Service Helex, Inc. v. United States*, 216 Ct.Cl. 470 (1978) (*en banc*);

*Renda Marine, Inc. v. United States*, 62 Fed.Cl. 371 (2004);  *Paalan v. United States*, 51 Fed.Cl.

738, 753 (2002).

Absent a showing of some exception to the attorney-client privilege, *see, e.g., United

States v. Jacobs*, 117 F.3d 82, 87-89 (2nd Cir. 1997), or that there has somehow been a waiver of

the privilege, *see, e.g., In re Grand Jury Subpoena*, 341 F.3d 331, 336-37 (4th Cir. 2003), it has

been held (albeit on facts radically different from those at bar) that disclosure may nonetheless be

permitted upon a showing of "good cause."  *Garner v. Wolfingarger*, 430 F.2d 1093, 1102-03 (5th

Cir. 1970).  "Good cause" might be shown by a demonstration that some special need exists, or

that there is no other way to get the information.  *Id*.  In the instant case, as the thinking of

Service employees is irrelevant, and none of the underlying information is original with the Internal Revenue Service (it having been obtained from plaintiff), it is difficult to imagine how good cause might be shown.

Plaintiff correctly observes that attorney-client privilege extends only to the solicitation and rendering of legal advice, and does not extend, for example, to "business" advice.  Motion to Compel, Exhibit E, at 12-13.  But then plaintiff does something truly breathtaking.  Plaintiff points out that the business of the Internal Revenue Service is determining a taxpayer's tax liability.  Plaintiff then boldly claims that much of the advice provided by legal counsel to the Internal Revenue Service might actually have been advice regarding the determination of plaintiff's tax liability, and therefore simply advice about the Service's "business." Of course it was.  And the advice respecting that determination that came from Service attorneys was legal advice to their client, and accordingly is protected.

Fortunately, plaintiff fails to pursue this suggestion, moving on only to cite a Tax Court case to the effect that routine revenue agent's reports, even if reviewed by an attorney, are not protected.  Motion to Compel, Exhibit E, at 13.  We are not aware that any documents meeting that description have been listed as covered by the privilege, and plaintiff does not claim otherwise.  In fact, aside from repeatedly relying upon the naked assertion that "DMC believes" that the documents are not privileged, or that it is "impossible for DMC to determine" if they are, plaintiff identifies only one document to which the privilege may not apply. [4/] Without any

---

[4/]  This is an email, identified as Bates Nos. SUPP00290-00291.  Motion to Compel, Exhibit F, at 13.  While plaintiff correctly states that the description does not refer to counsel as a party to the e-mail, an examination of the e-mail would make it clear that it contains commentary on discussions with local agency legal counsel.  The failure to have as full a description as the

(continued...)

affirmative showing whatsoever, plaintiff then merely concludes that the Court ought to doubt the descriptions in the privilege logs, and take up the task of reviewing all of the documents *in camera*.  This is not enough.

      2.    <u>The deliberative process privilege</u>.

The Court of Claims is sometimes credited with having decided the first federal case recognizing a deliberative process privilege, in *Kaiser Aluminum & Chemical Corporation v. United States*, 141 Ct.Cl. 38, 157 F.Supp. 939 (1958).  *See Marriott International Resorts, L.P. v. United States,* 437 F.3d 1302, 1304 (Fed. Cir. 2006).  The Supreme Court, in *NLRB v. Sears Roebuck Co.*, 421 U.S. 132, 150 (1975), observed that within the broader executive privilege is a doctrine which protects from disclosure material "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which the governmental decisions and policies are formulated."  The privilege is recognized in order "to encourage open, frank discussions on matters of policy between subordinates and superiors."  *Tax Analysts v. Internal Revenue Service*, 152 F.Supp.2d 1, 20 (D.D.C. 2001).  The material must, therefore, be both "predecisional" and "deliberative."  The information must come prior to the time the decision is made, or the policy adopted.  "In other words, the records or reports must address activities "antecedent to the adoption of an agency policy.'"  *Walsky Construction Co. v. United States*, 20 Cl.Ct. 317, 320 (1990), quoting from *Jordan v. Department of Justice*, 591 F.2d 753, 774 (D.C.Cir.1978).  A

---

      [4]/ (...continued)
taxpayer may wish does not mean that no privilege exists or that the government did not properly assert the privilege.  If the only privilege asserted for this document were the attorney-client privilege, we would be inclined to submit it for *in camera* review, so that the court might be satisfied that it was our description, rather than our selection, which was faulty.  We have not done so, however, since the same document also has been withheld as subject to the deliberative process privilege.

document is "deliberative" when "it reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

All of the documents for which privilege has been invoked are both predecisional and deliberative.  All were prepared, in time, prior to the issuance of the Notice of Deficiency, the decision to which the entire administrative process points.  It is via this "90-Day Letter" that the Internal Revenue Service advises a taxpayer of the nature and extent of the deficiencies found, and provides the taxpayer with the opportunity for review by the Tax Court.  26 U.S.C. §§ 6212, 6213.  A copy of this document, dated April 4, 2005, is attached as Exhibit B to the Complaint.  As well, all of the documents for which privilege has been invoked are truly "deliberative," as can be determined from the detailed description of each of them included in the affidavits of Margo Stevens.

In the instant case, there should be no question that the privilege has been properly invoked, and that all the requirements imposed by the Federal Circuit in *Marriott International Resorts, L.P. v. United States*, 437 F3d 1302 (Fed. Cir. 2006) have been met.  Determinations to assert the privilege were made with respect to each document at the time the privilege was invoked, via affidavits submitted by Margo Stevens, the person found appropriate in *Marriott*, pursuant to the very same delegation orders.  With respect to each document, Ms. Stevens explains in her affidavits "with particularity how or why disclosures of the substance of the documents would harm an identified deliberative function."  The declarations identify, with respect to the types of documents described, why the documents should be protected from discovery, and what specific harm would result from their disclosure.  *Pacific Gas & Elec. Co. v. United States*, 70 Fed.Cl. 128, 132-34 (2006).

Plaintiff spends a good deal of space making the Government's document production, and service of the various privilege logs and affidavits, seem rather more complex and confusing than it was.  Motion to Compel, Ex. D.  Plaintiff then goes on to suggest that since in one instance a privilege log was produced prior to an affidavit from Margo Stevens, that the privilege was not properly raised.  Motion to Compel, Ex. F, at 5-6.  Such minor and technical delays are not the sort of thing found objectionable in cases such as *Pacific Gas and Electric Company v. United States*, 71 Fed. Cl. 205, 208-210 (2006), where the privilege was supported only by an affidavit executed long after the documents had been identified and withheld, and only in response to a motion to compel. [5/]  In the instant case, affidavits by a proper official of the Internal Revenue Service describing each of the documents for which privilege is claimed was produced at the time document production was made.  Documents were not withheld (*i.e.*, the privilege was not invoked) merely by trial counsel, but instead by the agency, as required by *Marriott.*  Plaintiff's complaint of minor deviations from perfection should be rejected.

Oddly, the privilege logs and affidavits once described by plaintiff's counsel as "the best privilege log he'd ever seen," have now somehow become fatally deficient. [6/]  The Court itself

---

[5/]  We observe that such a practice has not always been found deficient by the Court. *See, e.g., Huntleigh USA Corp. v. United States*, 71 Fed. Cl. 726, 727 (2006); *Vons Companies, Inc. v. United States*, 51 Fed. Cl. 1, 22-23 (2001).  Indeed, in *Kaiser* itself the Government did not at first produce a privilege claim from the relevant agency head.  141 Ct.Cl. 38, 157 F.Supp. 939, 942-42.

[6/]  Transcript of the Hearing of November 29, 2006, at 34:

THE COURT: Complaining, by the way, about the 40 or 80 pages, because what the government has done is something that is of great benefit and assistance to the Court, which is to explain and give some texture to the statement of what privilege is being [asserted], and why.  So that's helpful to the prompt resolution of this.

(continued...)

- 19 -

volunteered, in the course of the conference held on Friday, January 19, that these were "pretty good" privilege logs. And so they are.  Plaintiff now claims that the logs and affidavits fail to provide adequate "precise and certain reasons" for why each document should remain confidential. While plaintiff provides no examples of what "precise and certain reasons" might look like so as to meet whatever standard plaintiff imagines is to be required, plaintiff does point to specific descriptions thought to be particularly egregious.  See Motion to Compel, Exhibit E, at 7.  We are at a loss to know what plaintiff finds wanting.  The descriptions explain the contents of the documents, and the affidavits assert that such documents, if disclosed, will cause harm to the decision-making process, as more completely explained, for example, in paragraphs 9, 10 and 12 of the November 15, 2006, affidavit of Margo Stevens.

Plaintiff also cites cases which observe that "'merely a paraphrase of the rationale for the deliberative-process privilege described in the case law' does not satisfy this requirement." Exhibit E at 5.  We detect the approach of a Catch-22, with the Government as loser whatever we do: To the extent that the affidavit sets out reasons and rationales found proper in decided cases, they are merely a paraphrase thereof, and (according to plaintiff) for that reason invalid.  But to the extent that the affidavit fails to set out reasons and rationales found proper in the decided cases, they fail to comport with the law, as expounded in the decided cases.  We decline to play this game, under which no assertion of privilege would ever be proper, and a court would always be obliged to conduct an *in camera* review.  The affidavits set out the sort of harm that will flow

---

[6]/ (...continued)
MR. OLSON: I have to say it's the best privilege [log] I've ever seen.  So from the standpoint of a party being able to speak meaningfully to the question of privilege, this has to be as good a quality work.

from disclosure of the privileged documents, and describes each document in a way that makes clear that it includes the sort of material covered by the privilege.

Of course, it would seldom be the case (and this is not that case) that disclosure of one or another of the particular documents involved would in-and-of-itself cause harm to the decision-making process because of some particularly scandalous or bizarre revelation.  Instead, as must nearly always be the case, disclosure of any document in which a Government employee suggests or recommends that one course be taken, rather than another, or that this evaluation of the facts is more compelling than some other, will cause such employees – and all other Government agents, officials and employees – to obscure their views and recommendations, and be less than frank in discussing pending cases.  What IRS official will frankly and forcefully argue that a taxpayer's position is correct if that opinion, found wanting by those in authority, will be spread across the pages of the taxpayer's brief in subsequent litigation?  What will tax administration, and tax litigation, come to look like if determinations and decisions can never be made but with an eye over one's shoulder?

Unlike a taxpayer, whose interest is in paying the least amount of tax, it is the responsibility of the Internal Revenue Service to get it right, whether that increases or decreases the revenue.  Agents of the Service take this responsibility seriously, and accordingly often argue in favor of legal positions or factual evaluations that do not serve to collect the greatest amount of tax, but do promote the mission of getting things right.  This process (which, of course, often leads to pro-taxpayer determinations) will be eroded and discouraged by the disclosure of the documents by which it occurs.

Plaintiff would narrow the privilege to deliberations regarding matters of broad "policy", rather than mere decisions or determinations by the agency.  Motion to Compel, Ex. F, at 8-12. Plaintiff cites no authority for such a distinction, and we can imagine no policy reason favoring it.  The purpose of the privilege is to promote open and frank discussion, in the belief that such give-and-take results in better decisions, irrespective of their breadth.  While plaintiff may believe the privilege is limited to matters of policy, the Supreme Court has consistently described it as protecting "a process by which Government decisions *and policies* are formulated." *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 2 (2001), *quoting NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (emphasis added).  The first case to describe such a privilege, *Kaiser Aluminum, supra,* itself involved a document related to the terms of a sale by the Government of certain aluminum plants to plaintiff and to at least one of its competitors, rather than to some matter of high policy.  And in that case the applicable realm for its application is described as follows (*supra*, 157 F. Supp., at 946, 141 Ct.Cl., at 48) (emphasis added):

> There is a public policy involved in this claim of privilege for this advisory opinion-the policy of open, frank discussion between subordinate and chief *concerning administrative action*.

*Quoted with approval*, *Environmental Protection Agency v. Mink*, 410 U.S. 73, 86-87 (1973). The determination of plaintiff's tax liability in the instant case was certainly a "government decision," it clearly involve "administrative action," and documents reflecting the process by which that decision was reached are entitled to protection.

Unlike other branches of executive privilege, the deliberative process privilege is not absolute, and may be overcome by a "showing of compelling need."  *Marriott, supra*, 437 F.3d at

1307.  Plaintiff must show "a particularized need" for each document sought.  *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir.1993).  In *Ferrell v. U.S. Dept. of Housing and Urban Development*, 177 F.R.D. 425, 429 (N.D.Ill.,1998), *cited with approval, Pacific Gas and Electric, supra*, 71 Fed. Cl. at 210, n. 6, the District Court summarized the factors that might be considered in evaluating whether, despite proper invocation of the privilege, documents ought nonetheless be disclosed:

> (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies, that is would hinder frank and independent discussion about governmental policies and decisions.

In the instant case, *not even one* of these factors favors disclosure in the teeth of the deliberative process privilege:

1.      None of the documents is relevant to any evidentiary issue presented by this case;

2.      All evidence admissible to prove the material facts of this case is available from other sources – plaintiff itself and third parties for the underlying facts, and experts for matters within their expertise;

3.      The Government's role in this litigation is one of observer and after-the-fact analyzer of facts and law.  Unlike situations such as posed in *Pacific Gas & Electric, supra*, the Government was not a party to the events or transactions relevant to resolution of the litigation;

4.      Every case is serious, and every taxpayer understandably believes its own case is particularly serious and interesting.  But the fact of the matter is that the instant

- 23 -

dispute is a garden-variety tax refund suit, depending largely on valuation

questions.  No great policy issues are involved;

5.      Disclosure would chill deliberations, and hinder frank and independent discussion

of policies and decisions.  In the future, every Service official would need to

consider that, were the case upon which he is working to result in litigation in the

Court of Federal Claims, every opinion, argument, recommendation or

speculation of his would be subject to discovery and second-guessing, and he

himself probably subject to deposition.  Better for him to communicate orally, and

limit what is committed to paper, a practice guaranteed to promote confusion,

inefficiency and imprecision.

Thus, the documents with respect to which deliberative process privilege has been claimed

should not be provided to plaintiff.

3.      <u>The attorney work-product doctrine</u>.

Rule 26(b)(3) provides that attorney work-product may be obtained only upon a showing

of "substantial need," and an inability otherwise to obtain the information "without undue

hardship."  The Rules describe the privilege as encompassing materials "prepared in anticipation

of litigation or for trial."  Plaintiff claims simply that the privilege does not apply to the

documents for which it is claimed because they were not "in anticipation of litigation."  Motion

to Compel, Ex. F, at 14-16.  Citing cases that hold that materials prepared routinely in the

ordinary course of business are not protected, plaintiff argues that since the Service's ordinary

business is examination and audit, nothing having to do with those activities can qualify for the

privilege.  Plaintiff is quite wrong.

- 24 -

Plaintiff misapprehends the scope of the work product privilege.  The work product doctrine permits the deletion of material prepared in anticipation of litigation or for trial by or for a party or by or for that party's representative, including the party's attorney, consultant, or agent. *Tax Analysts v. Internal Revenue Service*, 117 F.3d 607, 620 (D.C. Cir. 1997) (emphasis added). The privilege, therefore, permits the deletion of the attorney's, or other party's representatives or agents', mental impressions, conclusions, opinions, or legal theories, and factual materials prepared by the attorney or the party in anticipation of litigation.  In *United States v. Roxworthy*, 457 F.3d 590, 599-600 (6th Cir. 2006) the court summarizes case law on objectively reasonable anticipation of litigation, and confirms that documents prepared during an IRS audit often are in anticipation of litigation:

> Courts have articulated various tests for determining when anticipation of litigation is too speculative to be objectively reasonable. The D.C. Circuit has required the objecting party to prove that a document was "prepared with a specific claim supported by concrete facts which would likely lead to litigation in mind," *Coastal States*, 617 F.2d at 865, but has also found the privilege to apply in the absence of a specific claim where an attorney "rendered legal advice in order to protect the client from future litigation about a particular transaction," *In re Sealed Case*, 146 F.3d at 885 (recognizing privilege attached to documents that were created after public stir surrounding transaction but two years before formal investigation began). *See also Delaney*, 826 F.2d at 127 (finding that privilege applied to memorandum discussing possible legal challenges to IRS's proposed statistical sampling program even though no litigation was pending and program had yet to be implemented). The Fourth Circuit has stated that the protection only applies when the "preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Nat'l Union*, 967 F.2d at 984. Although not every audit is potentially the subject of litigation, *see Coastal States*, 617 F.2d at 865, a document prepared "in anticipation of 'dealing with the IRS' . . . may well have been prepared in anticipation of an administrative dispute and this may constitute 'litigation' within the meaning of Rule 26," *Hodges, Grant & Kaufmann v. IRS*, 768 F.2d 719, 719-22 (5th Cir. 1985).

Here, Yum [the taxpayer] argues that it anticipated litigation because a yearly IRS audit of Yum was a certainty due to the company's size, the transaction at issue involved a $112 million discrepancy between tax loss and book loss, and the company had been advised by KPMG that the area of law was unsettled and that the IRS had recently targeted this type of transaction. Yum points to a case with analogous facts in which a district court upheld the work-product privilege. In *ChevronTexaco*, 241 F. Supp. 2d at 1082, as here, the company's tax returns were routinely examined by the IRS, the company was engaged in a transaction involving "a very substantial amount of tax dollars," and the IRS "had previously questioned similar transactions." The court concluded that the withholding party "reasonably believed that it was a virtual certainty that the IRS would challenge the . . . transaction." *Id*.

Likewise, in *United States v. Adlman*, 68 F.3d 1495, 1496 (2d Cir. 1995) (Adlman I), an accounting firm prepared documents evaluating the tax consequences and likely IRS challenges to a company's proposed reorganization in which the company would claim a capital loss of $290 million. The Second Circuit held that the district court erred in concluding that the prospect of litigation was too remote for work-product privilege to apply, observing that "[i]n many instances, the expected litigation is quite concrete, notwithstanding that the events giving rise to it have not yet occurred." Id. at 1501. The court remanded the matter for the district court to apply the proper standard.

In order to qualify as attorney work product, a document must be "prepared in anticipation of litigation." Rule 26(b)(3). Specifically, this means that the privilege does not attach until "at the very least some articulable claim, likely to lead to litigation," has arisen. *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 865 (D.C. Cir. 1980). But, as *Roxworthy* demonstrates, a party can reasonably anticipate litigation even before the commencement of an audit. Once the audit has begun, the likelihood of litigation increases. That the work product could assist both during the audit phase and during future litigation does not lessen its status as work product, since Rule 26(b)(3) does not limit work product protection when an item can have a dual purpose. The privilege applies to work done for actual litigation and for anticipated litigation. *United States v. Adlman*, 134 F.3d 1194, 1198 (2nd Cir. 1998).

- 26 -

In this case, the Service and the taxpayer identified early in the audit the KIRO valuation issue as one with respect to which the parties strongly disagreed.  It was always clear that in the absence of agreement, the Service would issue a Notice of Deficiency (as ultimately was the case).  And it was equally clear – sometimes stated nearly in terms – that plaintiff would litigate any such assessment in the Court of Federal Claims.  As a matter of fact, many of the documents themselves reflect this intention.  Other documents reflect the solicitation of agency counsel's assistance because of the expectation that plaintiff would bring the instant action.

The government reasonably anticipated litigation on this issue almost from the inception of the audit.  To have done otherwise would have required a level of ignorance, naivete and gullibility which ought not be lightly attributed to the Internal Revenue Service and agency counsel.  And the Government has reasonably claimed the attorney work product privilege on items identified in the privilege logs.  We note that this privilege extends not just to the legal memoranda prepared by counsel, but also to the notes prepared by counsel.  *Bernardo v. Commissioner*, 104 T.C. 677, 692 (1995).  In *Upjohn Co. v. United States*, 449 U.S. 383, 397 (1981), the Supreme Court treated the notes of the taxpayer's corporate counsel as attorney work product even though prepared to deal with an IRS administrative investigation.  Similarly, the notes and memoranda of IRS agency counsel prepared during an administrative audit or examination should receive similar protection.  In this case, the government did not assert work product protection for every document, as plaintiff's motion would have the Court believe.  Rather, where the content of a document, or the context in which a document was written, reflected the expectation of litigation, the attorney work product privilege has been claimed.  Requiring the production of the notes of IRS agency counsel would reveal to plaintiff those

things which the attorneys thought of sufficient significance to record in anticipation of that

litigation.  Accordingly, work product doctrine protects those notes from production.  *Upjohn Co.*

*v. United States*, 449 U.S. at 397. [7/]

## SECTION 6103

Section 6103 of the Internal Revenue Code provides that "Returns and return information

shall be confidential" and that no person "shall disclose any return or return information."  Both

the terms "return" and "return information" are broadly defined by the statute to include any

taxpayer information, including items on his return, payments, liabilities, assets and the like, and

extends even to the fact that the taxpayer's return was, is, or might be examined. § 6103(b)*.  See*

*Church of Scientology of California v. Internal Revenue Service*, 484 U.S. 9, 12 (1987).

Disclosure of return information is not just prohibited, it is a crime punishable by up to one year

in prison.  18 U.S.C. 1905.  "Maintaining such confidentiality is critical to our system of taxpayer

disclosure of financial information in tax returns."  *Zingg v. Department of Treasury, IRS*, 388

F.3d 839, 843 (Fed. Cir. 2004).

Section 6103(h)(4) provides that taxpayer return information may be disclosed "in a

Federal or State judicial or administrative proceeding pertaining to tax administration, but only"

if directly related to the instant case:

---

[7/]  A few documents with respect to which the government claimed work-product protection related to disclosure issues.  For these documents, the litigation predicate was not that the attorneys were anticipating litigation in this case.  Rather, the attorneys were addressing how to avoid, or minimize the risk of, litigation with other taxpayers by not making unauthorized disclosures of the tax information of those other taxpayers in this proceeding.  The anticipation and avoidance of litigation regarding improper disclosure provides another example of reasonable anticipation of litigation so that work product related to those matters qualifies for the asserted privilege.  *See generally Delaney, Midgail & Young v. IRS*, 826 F.2d 124 (D.C. Cir. 1987).

> (B) if the treatment of an item reflected on such return is directly related to the
> resolution of an issue in the proceeding;

> (C) if such return or return information directly relates to a transactional
> relationship between a person who is a party to the proceeding and the taxpayer
> which directly affects the resolution of an issue in the proceeding;

Proper application of these exceptions rests upon the meaning of "directly related."  Courts

addressing this exception have not normally found the term unambiguous, and have thus resorted

to legislative history to determine its meaning.  In *Vons Companies v. United States*, 51 Fed. Cl.

1, 16 (2001), the Court concluded that return information of a third-party taxpayer with a similar

tax issue or claim is not "directly related" and therefore may not be disclosed (footnotes and

citations omitted):

> Thus, the legislative history establishes that Congress intended that two separate
> requirements would be met before tax returns or return information may be
> disclosed by the IRS under section 6103(h)(4)(B).  First, in order to qualify as
> "related" information, either an item reflected on a return must be related to the
> resolution of an issue in the proceeding (the "item test") or there must exist a
> transactional relationship between a party and the taxpayer (the "transaction test").
> And then to be "directly" related, there must be a "direct relationship" between the
> information and the resolution of an issue in the proceedings.  Critically, for our
> purposes, these committee reports, both by way of explanation and example, attest
> that neither the "item test" nor the "transaction test" are met when the only link
> between the taxpayer seeking the information and the third party is that, owing to
> unrelated tax events, both taxpayers claimed the same tax treatment for a similar
> item of income, deduction or credit.  Thus, neither the transaction test nor the item
> test are met simply because both taxpayers' returns involve, for example, the
> amortization of the same type of intangible asset or the exclusion of a particular
> category of income.  And the reason for this result is plainly that, except, perhaps,
> in a case involving the application of the IBM doctrine, the treatment of an item
> on the third-party's return, whether as originally claimed or allowed by the IRS,
> has no legal relevance to the proper tax treatment of that same item on the return
> of the taxpayer requesting disclosure.

In the case at bar plaintiff makes no claim with respect to those documents withheld pursuant to

§ 6103 which demonstrates either that an "item" on the third party's return is "directly related" to

- 29 -

resolution of any issue in this case, or that there exists any "transaction" between plaintiff and any third party whose tax return information plaintiff seeks that is "directly related" to resolution of any issue in this case, as those terms are used in the statute.

Similarly, while plaintiff correctly recognizes that amalgamations of tax data, such as statistical studies and compilations, are not themselves return information (see I.R.C. §§ 6103(b)(2) flush language, 6108), plaintiff mistakenly characterizes the appraisals performed by the Service's experts to develop valuation issues in the examinations of unrelated third party taxpayers as such "statistical studies and compilations." An appraisal performed to value a taxpayer's property in the course of an IRS audit, to determine that other taxpayer's tax liability, constitutes the return information of that taxpayer. *Cf. Kamman v. IRS*, 56 F.3d 46 (9th Cir. 1995) (appraisals purchased by the IRS to value property seized from a delinquent taxpayer for public sale were not return information because they were *not* "with respect to the determination of … liability"). Having concluded the appraisals were, in their entirety, the return information of the taxpayers who were the subjects of the audits in which they were developed, there can be no redaction of taxpayer identifying information. The approach taken by the government is dictated by the Supreme Court's holding in *Church of Scientology*, 484 U.S. at 18, that "removal of identification from return information would not deprive it of protection [from disclosure] under section 6103(b)."

And plaintiff is entirely mistaken in implicitly suggesting that the redaction of information that would explicitly identify another taxpayer would actually prevent the disclosure of the identities of those unrelated third-party taxpayers. The appraisals relate to broadcast or media companies. In the various geographic markets, only a few entities operate radio, television

- 30 -

or cable businesses.  It would take very little from these appraisals for another party to identify one of the limited number of entities operating in a given geographic market. [8]/

Plaintiff observes that compilations of taxpayer return information, in a form that would not permit any taxpayer to be identified, is not protected by section 6103.  Plaintiff then simply states that "the Government has failed to show that the documents withheld are properly classified as "return information."  This is not an argument, but an unsupported conclusion, to which it is impossible to respond.

Plaintiff then goes on to suggest that it somehow meets the "item" test of 6103(h)(4)(B).  As explained above, "item" does not mean what plaintiff would have it mean.  If it did, then plaintiff would be entitled to receive from the Government the return information of any taxpayer who had ever valued a broadcasting property, on the theory that that return included an "item" similar to an "item" on plaintiff's return.  The law supports no such absurd result.

Plaintiff argues that it is entitled to what it assumes to be valuation reports for unrelated transactions, having to do with unrelated taxpayers, because the Government might, at trial,

---

[8]/  Plaintiff sneers that the irrational way in which the Government's claims under I.R.C. § 6103 have been made is demonstrated by our unwillingness to produce portions of a published article in *Tax Notes Today* and a published court opinion.  Even this assertion by plaintiff is in error.  As a review of our discovery responses makes clear, the audit personnel working on plaintiff's case consulted with IRS personnel working on audits of other taxpayers.  They did this to share knowledge and expertise and better develop issues.  Providing the *Tax Notes Today* article and published court opinion, which had been gathered by IRS personnel assigned to the audits of those third party taxpayers and later shared with plaintiff's audit team, would identify those other taxpayers and the fact of their audits, protected tax return information.  *Church of Scientology*, 484 U.S. at 12.  While the public is obviously aware of the article and court opinion, their disclosure from Service audit files discloses the fact that they were being examined by the IRS, a fact that cannot otherwise be gleaned from the *Tax Notes* article or opinion, and quintessentially confidential return information. Thus, the Service is prohibited from providing these public documents to the plaintiff because it would provide information the Service is prohibited from disclosing.

"rely" on valuation methods that might be similar to those methods used in such valuation reports.  And so the Government might.  But if it does, the reports remain wholly irrelevant, of no conceivable use to either plaintiff or the Court.  More importantly, they would remain shot through with information that would permit identification of the taxpayer involved which, if redacted, would plainly render the reports unintelligible.  The only case upon which plaintiff relies, *Beresford v. United States*, 123 F.R.D. 232 (1988) is not to the contrary.  In that case, the third-party information ordered to be disclosed was valuation reports for third-party taxpayers of *the very same privately-held stock at issue in the pending refund suit*.  Nothing similar is involved at bar.  We observe in this respect that unlike the attorney-client or deliberative process privileges, section 6103 is an absolute bar to revealing a taxpayer's personal information, even if plaintiff were able to demonstrate some compelling need.  Of course, plaintiff shows no such need, since the reports are irrelevant.

## CONCLUSION

Plaintiff has already conducted extensive discovery, including deposition of a person without first-hand knowledge of the facts, who will not be a witness.   Plaintiff has already received every document it has requested that is not privileged, despite the fact that none of those documents is relevant, and none will find itself in the trial record of this case.  Every hour spent on matters such as the instant motion by defendant's counsel and the Court is another hour that cannot be spent on efforts which move this case – or some other – toward a conclusion.  It is time that these matters be brought to an end.

- 32 -

Plaintiff's motion provides no basis for ordering the Government to provide any additional responses to plaintiff's discovery, or to produce documents protected by well-recognized – and properly raised – privileges.  Plaintiff's motion should be denied.

Respectfully submitted,

   s/ W. C. Rapp
W.C. RAPP
Attorney of Record
*United States Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, DC 20044*
*Voice:  (202) 307-0503*
*Fax:     (202) 514-9440*
*Email:  william.c.rapp2@usdoj.gov*

EILEEN J. O'CONNOR
  *Assistant Attorney General*
DAVID GUSTAFSON
  *Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
  *Assistant Chief, Court of Federal Claims Section*

February 2, 2007                       s/ Steven I. Frahm
                                       Of Counsel

- 33 -